81 F.3d 969
 34 Fed.R.Serv.3d 1053
 Michael HOM, Plaintiff-Appellant,
v.
A. Roland SQUIRE, Arthur J. Hudachko and Douglas Bodrero,
Defendants--Appellees.
 No. 94-4267.
 United States Court of Appeals,
Tenth Circuit.
 April 12, 1996.
 
 Appeal from the United States District Court for the District of Utah (D.Ct. No. 91-CV-1016); David K. Winder, Judge.
 L. Zane Gill, L. Zane Gill, P.C., Salt Lake City, Utah, for Appellant.
 Debra J. Moore, Assistant Utah Attorney General (Jan Graham, Utah Attorney General, with her on the brief), Salt Lake City, Utah, for Appellees.
 Before TACHA, BALDOCK, and KELLY, Circuit Judges.
 TACHA, Circuit Judge.
 
 
 1
 In March of 1990, the Utah Department of Public Safety fired Michael Hom from his job as a computer programmer/analyst. Hom then brought a § 1983 action against A. Roland Squire and Arthur J. Hudachko, his former supervisors, and Douglas Bodrero, the Department of Public Safety Commissioner, alleging that they fired him in retaliation for exercising his First Amendment right to free speech. The defendants moved for summary judgment. Hom then moved to amend his complaint to add a claim of discrimination on the basis of a perceived handicap, under 29 U.S.C. § 794. The district court denied Hom's motion, and granted the defendants' motion for summary judgment. Hom now appeals both the denial of his motion to amend and the order granting summary judgment in favor of the defendants. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.
 
 BACKGROUND
 
 2
 Hom began his employment with the Department in May 1985. At that time, Hudachko was Hom's immediate supervisor. By the time Hom was dismissed, Squire had replaced Hudachko as Hom's supervisor. In 1989 Squire recommended to Brant Johnson, Deputy Commissioner of the Department, that Hom's employment be terminated. Squire gave three reasons for his recommendation. First, Squire alleged that Hom was a security risk. In a 1989 meeting with Richard Townsend, chief of the Utah Bureau of Criminal Investigation, Hom asked what would happen to someone who sabotaged the Department's computer files. Second, Squire accused Hom of insubordination. This allegation stemmed from Hom's July 1989 supervision of "the annual job run," a purging of certain computer files from the Drivers License Division. The job run had problems that Hom could not solve because he had not been informed of modifications that had been made to the computer system. When the problems emerged, Hom tried to contact Cherie Ertel, a Drivers License Division employee who was familiar with the annual job run process and the drivers license files. However, Ertel was unreachable. Hom then contacted Squire, who told Hom to call Bart Blackstock, Ertel's supervisor. Hom refused to call Blackstock, stating that as a staff member he did not have permission to call management personnel such as Blackstock. Squire again directed Hom to call Blackstock, and Hom again refused. Third, Squire alleged that Hom had committed perjury. When Squire issued a letter of reprimand to Hom for his handling of the annual job run, Hom filed a grievance in response. At the grievance hearing, Hom testified that he had arrived at work at 5:40 AM on the day after the job run in order to allow law enforcement access to the drivers license files by 8 AM. However, the entry and security systems had not recorded anyone entering the Department offices until 7:00 AM. Confronted with this evidence, Hom nevertheless maintained that he had arrived at 5:40 AM. In his recommendation to Johnson, Squire presented evidence that Hom had perjured himself on other occasions as well.
 
 
 3
 In September 1991, Hom filed this § 1983 suit, alleging that he was dismissed not for the reasons given by Squire, but in retaliation for exercising his free speech rights while serving on a Department committee and when filing grievances against his supervisors. In 1987 and 1988, at Hudachko's request, Hom served as technical subcommittee chairperson on a request for proposals committee (RFP committee) appointed to select a vendor for a new computer system for the Department's Drivers License Division. While serving on the committee, Hom voiced concerns about what he perceived to be the committee's illegal bidding processes. During this time, a number of Hom's co-workers expressed their concerns to Hudachko that Hom was behaving erratically. Some complained that they feared for their safety when with Hom. Their reports about Hom's behavior while he served on the committee prompted an internal investigation of him. In his complaint, Hom claimed that both the investigation and his eventual termination were motivated by his objections to the bidding process.
 
 
 4
 In addition to serving on the RFP committee, one of Hom's responsibilities at the Department was being on-call in order to address any technical problem with the Department's computer system. Hom claimed that he was on-call without a break for four and one-half years. Because Hom's work load increased substantially when he began serving on the RFP committee, he reached an informal agreement with Hudachko under which Hom would keep track of his overtime hours and Hudachko would ensure that he received corresponding leave time. Hom subsequently filed a grievance seeking his leave time because he believed that Hudachko would not or could not honor the agreement. Hom alleged in his complaint that his filing of this grievance, along with his filing of the grievance in response to Squire's reprimand after the job run, motivated the decision to fire him.
 
 
 5
 In October 1994, after taking discovery, Hom moved for leave to amend his complaint to add a claim for discrimination on the basis of a perceived handicap. Hom argued that, in taking depositions from Department employees, he discovered evidence that would support a claim that he was terminated because of perceived emotional instability, a violation of 29 U.S.C. § 794. The district court denied this motion on the grounds that the motion was untimely and would unduly prejudice the defendants. Meanwhile, the defendants filed a motion for summary judgment, which the district court granted. Hom now appeals both the denial of his motion to amend and the order granting summary judgment.
 
 MOTION TO AMEND
 
 6
 We review the district court's decision to deny Hom's motion to amend for abuse of discretion. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir.1993). Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend the pleadings after the time for amending as a matter of course "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In Foman v. Davis, the Supreme Court explained the approach that district courts should take in deciding whether to permit a party to amend the pleadings:
 
 
 7
 If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
 
 
 8
 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).
 
 
 9
 Hom filed his motion to amend nearly two years after the deadline for amending pleadings. Thus, he could amend his complaint only by leave of the court. The district court denied Hom's motion on the grounds that it was "untimely and prejudicial." Hom claimed that he was unaware of the factual basis for a perceived handicap discrimination claim until late in the course of discovery, after deposing defendants Bodrero and Hudachko, and witnesses Ertel and Townsend. Hom deposed Bodrero on July 12, 1994, Ertel and Townsend on July 14, 1994, and Hudachko on August 5, 1994. He did not file his motion to amend until October 10, 1994, over two months after taking Hudachko's deposition. At that point, the lawsuit was over three years old and on its fourth trial date, scheduled for December 19, 1994.
 
 
 10
 Hom's motion amounted to a request that he be allowed to add an entirely new and different claim to his suit little more than two months before trial. Under the circumstances, we cannot say that the district court abused its discretion by denying the motion for untimeliness and prejudice to the defendants. "It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend...." Frank, 3 F.3d at 1365. Thus, we hold that the district court did not err by denying the motion.
 
 MOTION FOR SUMMARY JUDGMENT
 
 11
 We review the district court's grant of summary judgment de novo. Lankford v. City of Hobart, 73 F.3d 283, 285 (10th Cir.1996). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of presenting evidence to show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir.1995). Courts must view the facts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Wilson, 52 F.3d at 1551.
 
 
 12
 Once the movant has made a showing that there is no genuine issue of material fact, the non-moving party "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Wilson, 52 F.3d at 1552. To avoid summary judgment, the non-moving party must present more than a mere scintilla of evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); Wilson, 52 F.3d at 1552. The non-moving party must show that there is a genuine issue for trial, a showing which requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S.Ct. at 2511. In doing so, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
 
 
 13
 In order for a public employee to prevail on a claim that her dismissal violates protected speech rights, the court must first determine that her speech is protected by the First Amendment. Powell v. Gallentine, 992 F.2d 1088, 1090 (10th Cir.1993). The First Amendment protects a public employee's speech when it involves a matter of public concern. Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 2896-97, 97 L.Ed.2d 315 (1987); Powell, 992 F.2d at 1090. In addition, the employee's interest, as a citizen, in such expression must outweigh the state's interest in providing public services efficiently. Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); Powell, 992 F.2d at 1090; Considine v. Board of County Comm'rs, 910 F.2d 695, 698-99 (10th Cir.1990). Assuming that the Pickering balancing test tips in favor of the employee, she must then show that the protected speech was a "motivating factor" in the challenged employment decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). The burden then shifts to the government-employer to show that it would have reached the same decision in the absence of the protected speech. Powell, 992 F.2d at 1090.
 
 
 14
 Hom claims that he was fired in retaliation for voicing his objections to the allegedly illegal practices of the RFP committee and for filing grievances against his supervisors. He argues that these statements are protected by the First Amendment and that his dismissal was motivated by this speech. The defendants maintain that the Department fired Hom for three specific reasons: because he was a security risk; because he was insubordinate; and because he had committed perjury. None of these alleged reasons involved statements by Hom that are protected by the First Amendment. Thus, defendants argue, there is no genuine issue of material fact. The district court held that Hom's speech regarding his grievances was not protected by the First Amendment, and consequently that he could not prevail with respect to those statements. The district court further held that Hom's speech regarding the procedures employed by the RFP committee may be protected by the First Amendment, but that Hom had failed to present adequate evidence of a causal connection between that speech and his dismissal. Accordingly, the district court granted summary judgment for the defendants.
 
 
 15
 We agree with the district court's conclusion that Hom's speech regarding his grievances was not protected speech. As noted above, the First Amendment protects a government employee's speech when that speech involves a matter of public concern. Rankin, 483 U.S. at 384, 107 S.Ct. at 2896-97; Considine, 910 F.2d at 699. Matters of public concern are those which can "be fairly considered as relating to any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Hom's grievances involved only matters of internal departmental affairs and personal interest, and thus his expression in support of his grievance was not protected by the First Amendment.
 
 
 16
 We also agree with the district court's conclusion that even if Hom's speech regarding the RFP committee had been protected, Hom failed to establish a causal connection between that speech and his dismissal. In opposing the defendants' motion for summary judgment, Hom produced only his own affidavit, which stated his belief that he was dismissed in retaliation for his criticism of the RFP committees procedures. He presented absolutely no other evidence to show a causal connection between his speech and his subsequent dismissal.
 
 
 17
 The evidence regarding the timing of Hom's dismissal suggests that his dismissal had nothing to do with his objections to the RFP committee's actions. Hom served on the committee in 1987-88; the Department did not terminate his employment until 1989. Furthermore, Hom's termination resulted from a letter written by Squire recommending that Hom be dismissed. Squire was not a Department employee when Hom served on the RFP committee, so even viewing the evidence in the light most favorable to Hom, no inference can be drawn that anything Hom said when on the committee motivated Squire's decision to recommend Hom's dismissal. One affidavit from Hom himself, filled with what the district court called "largely unsubstantiated speculation as to the reasons for his termination," is not enough evidence for a reasonable jury to find in his favor on this issue. Hom failed to present more than a mere scintilla of evidence to support his claim.
 
 
 18
 In sum, we hold that the district court did not err by denying Hom's motion to amend. In addition, we hold that the district court correctly granted summary judgment in favor of the defendants. Accordingly, the decisions of the district court are AFFIRMED.